UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EVAN FAIN III, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 10-cv-628 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

### I. Introduction

This action arises out of the devastating 1983 bombing of the U.S. Marine barracks in Beirut, Lebanon.[1] The attack decimated the facility, killed 241 U.S. servicemen and left countless others wounded, and caused injuries to serviceman Evan Fain III who is a part of this action. Mr. Fain and his family now bring suit against defendant Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS"). Their action is brought pursuant to the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 et seq., which was enacted as part of the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"). Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008). That provision, codified at 28 U.S.C. § 1605A, provides "a federal right of

---

[1] *See Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003) (Lamberth, J.); *Valore v. Islamic Republic of Iran*, 478 F. Supp. 2d 101 (D.D.C. 2007) (Lamberth, J.); *In re Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31 (D.D.C. 2010) (Lamberth, C.J.); *Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68 (D.D.C. 2010) (Lamberth, C.J.); *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150 (D.D.C. 2011) (Lamberth, C.J.); *O'Brien v. Islamic Republic of Iran*, 2012 WL 1021471 (D.D.C. 2012) (Lamberth, C.J.); *Davis v. Islamic Republic of Iran*, 2012 WL 1059700 (D.D.C. 2012) (Lamberth, C.J.); *Estate of Brown v. Islamic Republic of Iran*, 2012 WL 2562368 (D.D.C. 2012) (Lamberth, C.J.).

action against foreign states" that sponsor terrorist acts. *Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1, 4 (D.D.C. 2011) (quoting reference omitted).

## II.     Liability

On April 20, 2012, this Court took judicial notice of the findings of fact and conclusions of law in *Peterson v. Islamic Republic of Iran*, which also concerns the Marine barracks bombing, and entered judgment in favor of the plaintiffs and against Iran and MOIS with respect to all issues of liability. *Fain v. Islamic Republic of Iran*, No. 10-cv-628 (D.D.C. Apr. 20, 2012), 2012 WL 1377595, at *3–4 (citing *Peterson*, 264 F. Supp. 2d 46 (D.D.C. 2003) (*Peterson I*)). This Court then referred this action to a special master for consideration of plaintiffs' claims for damages. *Id.* at *13. Since the issue of liability has been previously settled, this Court now turns to examine the damages awards recommended by the special master.

## III.    Damages

Damages available under the FSIA-created cause of action "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). Accordingly, those who survived the attack may recover damages for their pain and suffering, as well as any other economic losses caused by their injuries; estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 82–83 (D.D.C. 2010).

"To obtain damages against defendants in an FSIA action, the plaintiff must prove that the consequences of the defendants' conduct were 'reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with this [Circuit's] application of the American rule on damages.'" *Salazar v. Islamic Republic of Iran*,

370 F. Supp. 2d 105, 115–16 (D.D.C. 2005) (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003) (internal quotations omitted)). As discussed in *Peterson II*, plaintiffs have proven that the defendants' commission of acts of extrajudicial killing and provision of material support and resources for such killing was reasonably certain to—and indeed intended to—cause injury to plaintiffs. *Peterson v. Islamic Republic of Iran (Peterson II)*, 515 F. Supp. 2d 25, 37 (D.D.C. 2007).

The Court hereby ADOPTS, just as it did in *Peterson II*, *Valore*, *Bland*, *Anderson*, *O'Brien*, *Davis*, and *Brown* all facts found by and recommendations made by the special master relating to the damages suffered by all plaintiffs in this case. *Id.* at 52–53; *Valore*, 700 F. Supp. at 84–87; *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 154 (D.D.C. 2011); *see also Anderson v. Islamic Republic of Iran*, No. 08-cv-535 (D.D.C. Mar. 20, 2012), 2012 WL 928256; *O'Brien v. Islamic Republic of Iran*, No. 06-cv-690 (D.D.C. Mar. 28, 2012), 2012 WL 1021471; *Davis v. Islamic Republic of Iran*, No. 07-cv-1302 (D.D.C. Mar. 30, 2012), 2012 WL 1059700; *Estate of Brown v. Islamic Republic of Iran*, No. 08-cv-531 (D.D.C. July 3, 2012), 2012 WL 2562368. However, if the special master has deviated from the damages framework that this Court has applied in previous cases, "those amounts shall be altered so as to conform with the respective award amounts set forth" in the framework. *Id.* The final damages awarded to each plaintiff are contained in the table located within the separate Order and Judgment issued this date, and this Court discusses below any alterations it makes to the special master recommendations.

### A. Pain and Suffering

Assessing appropriate damages for physical injury or mental disability can depend upon a myriad of factors, such as "the severity of the pain immediately following the injury, the length

of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." *Peterson II*, 515 F. Supp. 2d at 25 n.26 (citing *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 59 (D.D.C. 2006)).  In *Peterson II*, this Court adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages.  *Id*. at 54.  In applying this general approach, this Court has explained that it will "depart upward from this baseline to $7–$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadripeligic, partially lost vision and hearing, or were mistaken for dead," *Valore*, 700 F. Supp. 2d at 84, and will "depart downward to $2–$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire," *id*.  When a victim suffers severe emotional injury without physical injury, this Court has typically awarded the victim $1.5 million.  *Id.* at 84–85.

After reviewing the special master reports, the Court finds that the special master correctly applied the damages framework outlined in *Peterson II* and *Valore*, and ADOPTS the award for plaintiff Evan Fain.  Mr. Fain was paralyzed below the waist for around thirty days following the bombing.  Report of Special Master, June 1, 2012, ECF No. 34, at 6.  He also suffered a concussion, injured his lower back, and had a "hole in his arm."  *Id.*  After the bombing, he developed problems with both short- and long-term memory, as well as PTSD.  *Id.* at 7.  Mr. Fain has received an 80% disability rating from the Veterans' Administration.  *Id.* at 6.  The special master correctly recommended that Mr. Fain receive a $5 million award for the substantial injuries he incurred in the bombing.  *Id.* at 17.

      **B.**    **Economic Loss**

In addition to pain and suffering, Mr. Fain has proven to the satisfaction of the special master, and thus to the satisfaction of the Court, lost wages resulting from permanent and debilitating injuries suffered in the attack. *See Valore*, 700 F. Supp. 2d at 85. The Court therefore ADOPTS without modification the $1,768,703 in damages awarded for economic loss recommended by the special master. Report of Special Master, June 1, 2012, ECF No. 34, at 16.

### C.     Solatium

This Court developed a standardized approach for FSIA intentional infliction of emotional distress, or solatium, claims in *Estate of Heiser v. Islamic Republic of Iran*, where it surveyed past awards in the context of deceased victims of terrorism to determine that, based on averages, "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F. Supp. 2d 229, 269 (D.D.C. 2006). Relying upon the average awards, the *Heiser* Court articulated a framework in which spouses of deceased victims were awarded approximately $8 million, while parents received $5 million and siblings received $2.5 million. *Id.*; *see also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson II*, 515 F. Supp. 2d at 51). In the context of distress resulting from injury to loved ones—rather than death—courts have applied a framework where "awards are 'valued at half of the awards to family members of the deceased'—$4 million, $2.5 million and $1.25 million to spouses, parents, and siblings, respectively." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 n.10 (D.D.C. 2011) (quoting *Valore*, 700 F. Supp. 2d at 85); *see also Bland*, 831 F. Supp. 2d at 157. Children of a deceased victim typically receive an award of $3 million, while children of a surviving victim receive $1.5 million. *Stern*

*v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003); *Bland*, 831 F. Supp. 2d at 157; *Anderson*, 2012 WL 928256, at *2.

This Court has recently expounded further on the *Heiser* framework.  In *Bland* and *O'Brien* this Court held that—absent special circumstances—it is inappropriate for the solatium awards of family members to exceed the pain and suffering awards of the surviving servicemen. *Bland*, 831 F. Supp. 2d at 157–58; *O'Brien*, 2012 WL 1021471, at *3.  In those cases, the servicemen received $1.5 million pain and suffering awards for their emotional pain and suffering, but did not receive an award for physical pain and suffering.  *Id.*  The Court reduced the awards of the family members in rough proportion to the *Heiser* framework to: $1 million for spouses, $850,000 for parents, $750,000 for children, and $500,000 for siblings. *Id.*; *accord Davis*, 2012 WL 1059700, at *6.

In applying this framework, however, courts must be wary that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), and that deviations may be warranted when, *inter alia*, "evidence establish[es] an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship; medical proof of severe pain, grief or suffering on behalf of the claimant [is presented]; and circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27.

The special master correctly recommended a baseline $4 million *Heiser* award to Maria Elena Fain, the wife of serviceman Evan Fain III.  Report of Special Master, June 1, 2012, ECF No. 34, at 17.  For each of the Fain children—Maria Elena Amosa, Evain Fain IV, and Joseph Edward Fain—the special master recommended an award of $2.5 million.  However, following

the *Heiser* framework, children of a surviving victim should receive a baseline award of $1.5 million unless special circumstances warrant a higher award. *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003); *Bland*, 831 F. Supp. 2d at 157; *Anderson*, 2012 WL 928256, at *2; *Brown*, 2012 WL 2562368, at *3. The special master found that no special circumstances warranted an upward departure, and this Court agrees. Therefore, the Court will correct the solatium awards of the three children and reduce them to $1.5 million each.

### D. Punitive Damages

In assessing punitive damages, this Court has observed that any award must balance the concern that "[r]ecurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect . . . .," *Murphy*, 740 F. Supp. 2d at 81, against the need to continue to deter "the brutal actions of defendants in planning, supporting and aiding the execution of [terrorist attacks]," *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 184 (D.D.C. 2010). To accomplish this goal, this Court—relying on the Supreme Court's opinion in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007)—held that the calculation of punitive damages in subsequent related actions should be directly tied to the ratio of punitive to compensatory damages set forth in earlier cases. *Murphy*, 740 F. Supp. 2d at 81–82. Thus, in *Murphy* this Court applied the ratio of $3.44 established in *Valore*—an earlier FSIA case arising out of the Beirut bombing. *Id*. at 82-83 (citing *Valore*, 700 F. Supp. 2d at 52); *accord Bland*, 831 F. Supp. 2d at 158; *Davis*, 2012 WL 1059700, at *7; *Brown,* 2012 WL 2562368, at *5. Here, the Court will again apply this same $3.44 ratio, which has been established as the standard ratio applicable to cases arising out of the Beirut bombing. Application of this ratio results in a total punitive damages award of $52,524,338.

## IV. Conclusion

Iran's bill for sponsoring terrorism grows larger each day. After this opinion, this Court will have issued almost $8.9 billion in judgments against Iran as a result of the 1983 Beirut bombing.[2] A number of other Beirut bombing cases remain pending, and their completion will surely increase this amount. Regardless, no award—however many billions it contained—could accurately reflect the countless lives that have been changed by Iran's dastardly acts.

In closing, the Court applauds the Fain family's persistent efforts to hold Iran accountable for its cowardly support of terrorism. The Court concludes that defendant Iran must be punished to the fullest extent legally possible for the bombing in Beirut on October 23, 1983. This horrific act impacted countless individuals and their families, a number of whom receive awards in this lawsuit. This Court hopes that the victims and their families may find some measure of solace from this Court's final judgment. For the reasons set forth above, the Court finds that defendants are responsible for plaintiffs' injuries and thus liable under the FSIA's state-sponsored terrorism exception for $15,268,703 in compensatory damages and $52,524,338 in punitive damages, for a total award of $67,793,041.

A separate Order and Judgment consistent with these findings shall be entered this date.

SO ORDERED.

Signed by Chief Judge Royce C. Lamberth on July 31, 2012.

---

[2] *See Peterson II*, 515 F. Supp. 2d at 60 (awarding victims $2,656,944,977 in compensatory damages); *Valore*, 700 F. Supp. 2d at 90 (awarding victims $290,291,092 in compensatory damages and $1 billion in punitive damages); *Murphy*, 740 F. Supp. 2d at 83 (awarding victims $31,865,570 in compensatory damages and $61,302,571.60 in punitive damages); *Bland*, 831 F. Supp. 2d at 158 (awarding victims $277,805,908 in compensatory damages and $955,652,324 in punitive damages); *Anderson*, 2012 WL 928256 at *4 (awarding victims $7,500,000 in compensatory damages and $25,800,000 in punitive damages); *O'Brien*, 2012 WL 1021471 at *4 (awarding victims $10,050,000 in compensatory damages and $34,572,000 in punitive damages); *Davis*, 2012 WL 1059700 at *8 (awarding $486,918,005 in compensatory damages and $2,161,915,942 in punitive damages); *Brown*, 2012 WL 2562368 at *6–7 (awarding $183,281,294 in compensatory damages and $630,487,651 in punitive damages).